No. 12705

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

STATE OF MONTANA, Upon the relation
of C. E. SMART,

Petitioner,

-vs-

CITY OF BIG TIMBER, MONTANA et al.,

Respondents,

and

BEN BERG et al., Board of Trustees of
School District No. 1, of Sweet Grass
County, Montana

Plaintiffs and Appellants,

-vs-

THE CITY OF BIG TIMBER, MONTANA et al.,

Defendants and Appellants.

---

Appeal from: District Court of the Sixth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellants:

Conrad B. Fredricks, County Attorney, argued, Big
Timber, Montana
Richard Josephson, City Attorney, argued, Big Timber,
Montana

For Respondents:

Thomas H. Mahan argued, Helena, Montana

---

Submitted: September 18, 1974

Decided: NOV 15 1974

Filed: NOV 15 1974

*Thomas J. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This appeal arises from the judgment of the district court, Sweegrass County, following a combined trial of a condemnation action and a petition for a writ of mandate. Most of the essential facts were agreed upon and incorporated in a pretrial order.

Both cases involved proposed alterations to Sixth Avenue in Big Timber, Montana. The plat of that street shows it to be an eighty foot strip of land bordered by property zoned as residential. The portion used for vehicular traffic is forty feet wide, with twenty foot strips on either side containing sidewalks and grass parking areas.

Respondent C. E. Smart lives on Sixth Avenue directly across from the Big Timber Grade School, whose Board of Trustees is one of appellants here. The street itself is the property of the other appellant, the City of Big Timber.

In early 1971, the Board of Trustees determined that the school's playground should be redesigned so as to lessen the distraction caused by playground equipment being too near the classroom windows. The course chosen was to remove the cottonwood trees which grew between the playground and Sixth Avenue, to relocate the sidewalk, and to resurface the playground.

After the trees were removed the school board, with the approval of the town council, relocated the sidewalk moving it next to the curb along Sixth Avenue. It then applied to the city building inspector for a permit to construct an eight foot chain-link fence next to the sidewalk. The inspector denied the application, holding the city's zoning ordinance prohibited placing a fence closer than five feet from the property line—the request here was for a position fifteen feet outside the school's property line.

The town council approved that decision and the school board in accord with the provisions of section 11-2707, R.C.M. 1947, appealed the ruling to the City Board of Adjustment. That Board refused to allow the erection of the fence where requested, but did grant a variance permitting installation on the property line, rather than the required five feet inside that line. The school board did not appeal this decision to the district court, although it could have under the provisions of the zoning ordinance and section 11-2707, R.C.M. 1947.

The school board did, however, file a complaint seeking to condemn the land between its property line and the curb. Required to defend the city in the condemnation action, the town council attempted to effect a compromise which would satisfy the needs of both parties. After several meetings between the town council and the school board, it was agreed the city would install the fence, with the cost of installation being borne by the school board. The location of the fence was to be four feet from the sidewalk (eleven feet outside the school board's property line).

The town council passed a resolution implementing this compromise, but the legality of the meeting at which the vote was taken was challenged. However, later the resolution was clearly ratified at a legal meeting.

Upon learning of the proposed actions of the town council and the school board, respondent C. E. Smart filed a petition for a writ of mandate, seeking to compel the school board to erect a fence on its property line and to compel the town council and the school board to comply with the provisions of the zoning ordinance and sections 11-2707 and 11-2801, R.C.M. 1947.

The district court issued a temporary restraining order and an alternative writ of mandate. The petition was then combined with the condemnation action for trial. Motions were made

to quash the petition for mandate; to dismiss the condemnation action; and, for a declaratory judgment determining the rights of the parties.

Evidence was presented before the district court on July 20, 1973. On October 5, 1973, the district court decreed that:

" * * * the relief prayed for by Petitioner, C. E. Smart, be granted; that the action of the City Council taken under the police power be nullified; that the Writ of Mandamus be granted; that a permanent restraining order be granted as to the erection of a fence any place except on school property or on the property line; that the Respondents pay Petitioner's attorneys a fee of $1,000.00."

From that judgment and decree and from the denial of motions to amend findings of fact, conclusions of law, and the judgment, this appeal is brought.

The five issues set forth in appellants' brief can be answered by a determination of the applicability of sections 11-2707 and 11-2801, R.C.M. 1947, to the facts. In pertinent part, those sections provide:

"11-2707. Board of adjustment.

" * * *

"(8) Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment, or any taxpayer, or any officer, department, board, or bureau of the municipality, may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within thirty (30) days after the filing of the decision in the office of the board."

"11-2801. Discontinuation of streets--procedure. The council, or county commissioners if the town be unincorporated, may discontinue a street or alley, or any part thereof, in a city or town or unincorporated town or townsites, upon the petition in writing of all owners of lots on the streets or alleys, if it can be done without detriment to the public interest; provided that where the street or alley is to be closed for school purposes, a petition signed by seventy-five per cent (75%) of the lot owners on the whole street or alley to be closed, will be required; provided further that

- 4 -

> such vacation shall not affect the right of any
> public utility to continue to maintain its plant
> and equipment in any such streets or alleys."

Section 11-2707, R.C.M. 1947, provides an avenue of appeal from decisions of the city Board of Adjustment. The school board did not appeal the decision here and respondent argues the failure to do so somehow precludes the school board from bringing the condemnation action.

Had the decision of the city Board of Adjustment been illegal in some respect, there might be merit to respondent's contention. Here, however, the decision does have support in the city zoning ordinance, and it appears from the record the only complaint which could have been raised was that the Board abused its discretion. Montana law vests boards of adjustment with considerable discretion (Freeman v. Board of Adjustment, 97 Mont. 342, 34 P.2d 534), and the school board might justifiably have concluded an appeal on that ground would be useless.

Since the statute does not mandate an appeal from all adverse rulings, we certainly cannot require one here. But respondent argues that a condemnation action must also comply with the provisions of section 11-2801, R.C.M. 1947, and approval must be secured from lot owners on the street before the land can be condemned. The fallacy of this argument is patent: the statute on its face purports to require approval only when "the council, or county commissioners" wish to close a street. The condemnation action was brought by the school board, not the city council.

It is not argued that the school board lacks the statutory power to condemn. Chapter 99, Title 93, R.C.M. 1947, clearly gives the right of eminent domain to schools. Furthermore, zoning ordinances cannot limit the right to exercise the power of eminent domain. 1 Nichols', The Law of Eminent Domain §1.141[6] (3d ed. 1973).

However, sections 93-9904 and 93-9905, R.C.M. 1947, require that public property can be condemned only if the use to which it is to be applied is a more necessary public use. We note the condemnation complaint was amended to provide a perpetual, public easement for the sidewalk and any necessary utilities. The amended complaint also provided a reversion, if the land should cease to be used for school purposes.

In light of the benefits to be derived from the protection of the children by the fence, and considering that the public's pedestrian use of the land in question is not substantially impaired, we find ample evidence the condemnation will effect a more necessary public use. Therefore, we hold the district court erred in dismissing the condemnation action.

However, the school board was not pressing its condemnation action at the time respondent brought his petition. The compromise reached by the city and the school board contemplated the city's erection of the fence under its police power. The district court ruled this to be improper.

The city council has power to "alter, widen, extend, grade, pave, or otherwise improve streets, alleys, avenues, sidewalks, * * * and vacate the same." Section 11-906, R.C.M. 1947. Respondent correctly suggests that this power is limited in certain cases by section 11-2801, R.C.M. 1947, as heretofore set forth.

The history of section 11-2801, R.C.M. 1947, indicates it is the product of enactments and amendments dating back to 1887. Historically, it can be divided into three separate sections. The statute originally provided that a city council could discontinue a street upon petition of all the lot owners on that street. Sec. 429, 5th Div. Comp. Stat. 1887. In 1929, a bill was introduced in the legislature to add the requirement that the discontinuance must be done "without detriment to the public interest." House

- 6 -

Bill No. 39, Twenty-first Legislative Assembly, 1929. The provision for 75% approval of street closings for school purposes was added by the Affairs of Cities committee before the bill was passed. House Journal, Twenty-first Session, p. 125; Sec. 1, Ch. 13, L. 1929. In 1945, the statute was again amended to include the provision that vacation of a street will not affect the rights of public utilities to maintain their equipment there. Sec. 1, Ch. 36, L. 1945.

Our reason for including the rather lengthy history of section 11-2801, R.C.M. 1947, is to demonstrate that the present statute is the amalgam of the intent of a number of legislatures. This is important when this single statute purports to deal with the "discontinuance", "closing", and "vacation" of streets. It appears that the terms were thought of by the draftsmen as being interchangeable.

With this background, we turn to the facts here to determine whether the erection of the proposed fence would be a discontinuance, closing or vacation of all or part of Sixth Avenue in Big Timber, Montana. Section 11-906, R.C.M./lists a city council's powers as they relate to streets and avenues. The list includes altering, widening, extending, and improving those streets. It also includes vacating those streets, an action which was apparently thought to be different from the others listed.

The record here indicates that the installation of the fence would be an alteration and improvement of Sixth Avenue, not a vacation, closing or discontinuance of it. The effect of this construction is in accord with the decision in Doull v. Wohlschlager, 141 Mont. 354, 365, 377 P.2d 758, where this Court said:

> " * * * In construing a statute, courts must first resort to the ordinary rules of grammar, and in the absence of a clear contradictory

> intention disclosed by the text, must give
> effect to the legislative intent according
> to those rules, and according to the natural
> and most obvious import of the language,
> without resorting to subtle and forced con-
> struction to limit or extend their operation."

The natural import of the language "where the street or alley is to be closed for school purposes" (section 11-2801, R.C.M. 1947) does not include the placing of a fence where it blocks neither vehicular nor pedestrian traffic. Were we to construe it otherwise, the city would be forced to obtain land-owner approval every time they wished to place a traffic sign, street light, or fire plug within the platted area of a street.

The proposed exercise of police power was in accord with Montana law, and the district court erred in decreeing other-wise. For this, and the errors previously mentioned, we reverse the judgment of the district court and remand for further action not inconsistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

- 8 -