MR. JUSTICE WEBER
delivered the Opinion of the Court.
This is an eminent domain proceeding for the acquisition of defendant’s water distribution business. The Fourth Judicial District Court, Missoula County, held that the City of Missoula (City) failed to prove by a preponderance of the evidence that its acquisition of the business through eminent domain was necessary. The City appealed. We affirm in part, reverse in part, and remand for reconsideration.
The issue appealed is whether the trial court erred in determining what laws are applicable for establishing the City’s burden of proof and in weighing the evidence.
Mountain Water Company (Mountain Water) is a Montana corporation, which owns and operates a Missoula water system. The system also provides water for some 4,000 customers outside the city limits of Missoula. Park Water Company of California is the sole owner of Mountain Water. Park Water Company, in turn, is nearly *407 wholly owned by Henry (Sam) Wheeler, also of California. Park Water Company at its California headquarters, in conjunction with the local staff of Mountain Water, manages the Mountain Water system.
Mountain Water acquired the Missoula water system from Montana Power Company in 1979. The Missoula City Council was also interested in buying the water system at that time. However, because of the built-in delays associated with municipal financing, the City was unable to fund the purchase before the sale was made to Mountain Water. Shortly after Mountain Water acquired the water system, the City passed an ordinance authorizing the City Administration to acquire the water system by purchase or condemnation under Sections 7-13-4403 and 4404, MCA.
At the time of Mountain Water’s purchase of the system, customers were supplied by surface water from Rattlesnake Creek and water from several wells. The wells supplied approximately 55% of the annual needs, and Rattlesnake Creek supplied the remaining 45%. In 1983, Rattlesnake Creek became infested with giardia. Mountain Water immediately shifted over to the sole use of well water to supply its customers. The City contends that Mountain Water had been forewarned of the danger as much as two years before the outbreak, but that Mountain Water refused to take any preventative action. Mountain Water responds that it was as responsible as possible, having available as its only preventative measure the installation of a filtration system that would have cost between 4 and 5 million dollars, without any guarantee of 100% effectiveness. Mountain Water states that the State Board of Health gave it an unsolicited commendation for its speed in shifting users from Rattlesnake Creek to well water.
Rattlesnake Creek water continues to go unused. Mountain Water has developed additional wells and is currently 100% dependent upon wells for its supply of water. Mountain Water has not relinquished its water rights in Rattlesnake Creek, because the water serves as an emergency source.
In the spring of 1984, the City attempted to negotiate the purchase of Mountain Water. Those negotiations were unsuccessful. In June of the same year, the City adopted a resolution reaffirming its 1979 ordinance and its interest in acquiring the water system. Then, in late 1984, the City brought this condemnation proceeding against Mountain Water. The employees of Mountain Water were allowed to intervene in the action. The question of public ownership of the *408 water system was also submitted to the citizens of Missoula as a ballot initiative in September 1985. The electorate supported acquisition and the initiative passed.
In March 1986, a 4-day trial was conducted before the District Court sitting without a jury. All parties presented testimony and documentary evidence on the economic and other effects of a transfer of the water system from private to public ownership. In August 1986, the court issued its opinion and judgment holding that the City had failed to prove that the condemnation was necessary.
Did the trial court err in determining what laws are applicable for establishing the City’s burden of proof and in weighing the evidence?
The City argued below, and again asserts here, that its ordinance and resolution authorizing the acquisition of the water system conclusively establish the necessity of its acquisition of the system. It maintains that Section 7-5-4106, MCA, is controlling. That statute provides:
“The city or town council has power to condemn private property for opening, establishing, widening, or altering any street, alley, park, sewer, or waterway in the city or town and for establishing, constructing, and maintaining any sewer, waterway, or drain ditch outside of the corporate limits of the municipality or for any other municipal and public use. The ordinance authorizing the taking of private property for any such use is conclusive as to the necessity of the taking and must conform to and the proceedings thereunder had as provided in Title 70, chapters 30 and 31, concerning eminent domain.” (Emphasis supplied.)
Mountain Water argued, and the District Court held, that the controlling statutes are those in Title 7, Chapter 13, part 44, entitled “Water Supply and Regulation.” Their position is that the City ordinance does not establish a conclusive presumption of necessity.
For several reasons, we affirm the District Court’s conclusion on which statutes govern. First, the arrangement of these code sections as enacted in 1895 supports the District Court’s conclusion. The predecessors of both Sections 7-5-4106, MCA, and Sections 7-13-4402 through 4404, MCA, originally were numbered paragraphs under Political Code Section 4800, Codes of Montana 1895. This is how they appeared:
“The city or town council has power:
“64. To contract an indebtedness on behalf of the city or town *409 upon the credit thereof, by borrowing money or issuing bonds for the following purposes, to-wit: Erecting public buildings, sewers, bridges, water works, supplying the city or town with water by contract, the purchase of fire apparatus, the construction or purchase of canals or ditches for supplying the city or town with water . . . provided, that no money must be borrowed or bonds issued for any purpose hereinbefore set forth in this Section, until the proposition has been submitted to the vote of the taxpayers affected thereby of the city or town and the majority vote cast in favor thereof; and, further provided, that an additional indebtedness may be incurred, when necessary, to . . . procure a water supply for the said city or town which shall own or control said water supply and devote the revenue derived therefrom to the payment of the debt as follows: . . . Provided, that whenever a franchise has been granted to, or a contract made with, any person or persons, corporation or corporations, and such person or persons, corporation or corporations, in pursuance thereof and in good faith, have established and maintained a system of water supply, the city or town granting such franchise, or entering into such contract, before taking any action for the procurement of a water supply to be owned or controlled by such city or town, shall, by the passage of an ordinance, give notice to such person or persons, corporation or corporations, that it desires to purchase the plant and franchise of such person or persons, corporation or corporations, it shall have the right to so purchase the said plant upon such terms as the parties may agree; in case they cannot agree then the said city or town may proceed to acquire the same under the laws relating to the taking of private property for public use; provided, that no city or town, having a water supply furnished by private parties, under a contract or franchise, entered into or granted by the city or town, shall proceed to the erection or construction of a water plant to be operated by it, but in case the city or town shall desire to own and operate its water supply, it shall acquire the plant and supply already in operation therein as herein provided.
“75. To condemn private property for opening, establishing, widening or altering any street, alley, park, sewer, waterway, in the town or city, or for any other public use, and the ordinance authorizing the taking of private property for any such use is conclusive as to the necessity of the taking, and must conform to and the proceedings thereunder had, as provided in Title VIL, Part III., of the Code of Civil Procedure concerning eminent domain.
*410 “79. To adopt, enter into, and carry out means for securing a supply of water for the use of a city or town or its inhabitants.”
« 99
The detailed provisions on water system acquisition in paragraph 64 address 3 different aspects of acquisition of a water supply: issuance of bonds for purchase, negotiations with a franchiser for purchase, and a requirement that an existing water franchise be purchased rather than a new plant constructed. Many of those provisions are now found at Sections 7-13-4403 and 4404,’MCA. Paragraph 75 is now Section 7-5-4106, MCA. Paragraph 79 is now Section 7-13-4402, MCA. There is nothing to indicate that paragraph 75 should govern over the detailed provisions on water system acquisition in paragraphs 64 and 79. The reference to streets, alleys, parks, sewers, and waterways in paragraph 75 is primarily a list of “ways”, or uses requiring condemnation of strips of land. A water system is not within the type of items listed. Further, an acknowledged rule of statutory construction states that special statutes will prevail over general statutes. Taylor v. Dept. of Fish, Wildlife & Parks (Mont. 1983), 205 Mont. 85, 666 P.2d 1228, 1231, 40 St.Rep. 1112, 1116. Paragraph 75 could be applied to water distribution systems only through its catch-all mention of “any other public use.” On the other hand, paragraphs 64 and 79 are concerned specifically with city water supply and regulation, including acquisition of a private water supply system through eminent domain.
In 1902, this Court considered a case in which the City of Helena sought to condemn portions of several water rights for use as a city water supply. In that case, City of Helena v. Rogan (1902), 26 Mont. 452, 68 P. 798, this Court said,
“Another question presented is this: Can water already appropriated to a public use he condemned in eminent domain proceedings for any other use, whether the other use is a more necessary public use or not? Section 2214 of the Code of Civil Procedure provides that: ‘Before property can be taken it must appear: ... (3) If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use.’ It must so appear in the complaint. The use of water to irrigate a farm under the water-right law is a public use. Section 15, art. 3, Const.; Ellinghouse v. Taylor, 19 Mont. 462, 48 P. 757. The law permits the condemnation of a water right by a city, as we have seen. Therefore the position taken by respondents, to wit, that water which is being *411 used for any beneficial use cannot be taken for any other use, whether the other use is a more necessary public use or not, is not tenable. Whether the use of water by the city is necessary — that is, whether the city needs a water supply — is for the city, and for the city alone, through its council, to say. Whether it is necessary to condemn the water right in order to supply the city is to be alleged, and is a judicial question to be determined by the court. That it is a more necessary use than that of the ranchman is to be alleged, and by the court judicially determined. If it were not, then not only could a city condemn and take the water from a ranchman owning and irrigating 160 acres of land, but could, on its own allegation of superior necessity, condemn and take the water from another and a neighboring city, and leave it dry. And here again we may, in passing, say that the necessity for a complete description of the property to be taken is necessary, to the end that the court may see that the proposed use is superior in point of necessity to the present public use.”
Rogan, 68 P. at 802. The predecessor of Section 7-5-4106, MCA, was neither applied nor even mentioned. The questions of necessity and “more necessary use” were questions for judicial determination.
For all of the above reasons, we affirm the District Court’s conclusion that the City ordinance does not establish a conclusive presumption that the taking is necessary. The controlling statutes in this case are Sections 7-13-4401 through 4406, MCA, and those parts of Title 70 incorporated therein by reference. We therefore continue our analysis under those statutes.
Under Section 7-13-4403, MCA, the City properly exercised its right of offering to purchase the water system. Where, as here, there is no agreement to purchase, Section 7-13-4404, MCA, provides that the City “shall proceed to acquire the plant or water supply under the laws relating to the taking of private property for public use.” Section 70-30-111, MCA, sets forth the standard of proof and the facts which must be found before private property may be taken for a public use:
“Before property can be taken, the plaintiff must show by a preponderance of the evidence that the public interest requires the taking based on the following findings:
“(1) that the use to which it is to be applied is a use authorized by law;
“(2) that the taking is necessary to such use;
*412 “(3) if already appropriated to some public use, that the.public use to which it is to be applied is a more necessary public use;
“(4) that an effort to obtain the interest sought to be condemned was made by submission of a written offer and that such offer was rejected.”
In this case, the requirement under part (1) is met by Section 7-13-4402, MCA, which authorizes a municipal water system. The requirement of part (4) has been met by the submission of a written offer for the system and the rejection of that offer.
The District Court must determine, under part (2), whether it is “necessary” that the water system be taken by the City. This Court has defined “necessary” under this statute as a reasonable, requisite, and proper means to accomplish the improvement. State etc. v. Standley Bros. (Mont. 1985), [215 Mont. 475,] 699 P.2d 60, 62, 42 St.Rep. 563, 565-66. We recognize that two questions are involved: 1) Is it necessary that the City have its own water system? and, 2) Must the City take Mountain Water’s property in order to have its own system? Unlike the typical case involving condemnation of land for a highway, the first question here is not whether it is necessary to have the improvement, but whether it is necessary to have the improvement operated by the City instead of by private industry.
Under part (3), the District Court must determine whether the proposed use is “more necessary” than the present use. That the water already has been appropriated to a public use cannot be disputed given the broad interpretation of ‘appropriation to a public use’ in the eminent domain statutes. See Sections 70-30-102 and 203, MCA. In State ex rel. Smart v. City of Big Timber (1974), 165 Mont. 328, 528 P.2d 688, this Court determined that it was “more necessary” that city-owned property between a sidewalk and the boundary of a schoolyard be condemned for the purpose of erecting a fence than that the property continue in the existing public use. In doing so, the Court weighed the benefits to be derived from erecting the fence against the impairments to the existing use of the land. While not dispositive in the present case, Smart illustrates the broad range of considerations in determining whether a proposed public use is more necessary than the present use.
The District Court made detailed findings listing its reasons for concluding the City did not prove it was necessary that it acquire the water system. The court’s first finding considers the effects on Mountain Water employees of a takeover by the City. The undis *413 puted record shows that the City would make reductions in the number of personnel and also reductions in the pay scale of the remaining employees in order that the employees would be paid salaries comparable to other City employees. We do not agree with the District Court conclusion that the “City’s calloused plan for Mountain Water’s twenty-six employees, standing alone, is enough to defeat a finding of public necessity.” We hold that the effect on Mountain Water employees is one factor to be considered in determining whether the acquisition is necessary, but that factor alone is not dispositive.
The City submitted evidence to the District Court on the feasibility and cost of constructing a plant for treatment of Rattlesnake Creek water. It contended that Mountain Water was remiss in failing to construct such a plant after the giardia outbreak. The District Court found that use of Rattlesnake Creek water is not necessary. After reviewing the record, we conclude that substantial evidence supports the District Court’s finding. This evidence includes an admission that a treatment plant which is 100% effective against giardia is not technically feasible, and evidence that there is an abundance of well water available from Missoula’s underground aquifer. We conclude that the City’s evidence on construction of a water treatment plant is therefore irrelevant to the issue of whether the taking of the Mountain Water system by the City is necessary.
We also do not agree with the conclusion of the District Court that the “prejudicial issues” of profit and out-of-state ownership “demeans the whole process.” We do not find any legal basis for excluding these facts from consideration on the issue of necessity. We conclude these issues are pertinent to the determination of whether the public interest requires the taking under Section 70-30-111, MCA, as it has been broadly drafted and defined. In the absence of a declared policy by the Legislature giving greater or lesser weight to public ownership as compared to private ownership of a water system, these issues must be considered and weighed by the trial court on remand.
We conclude that the court’s remaining findings are supported by the evidence and are appropriate for consideration in evaluating whether City operation of the water system is a “necessary” use of the system. These include findings on public savings, on rates and charges, on cooperation between Mountain Water and the City, and on the effect of having Mountain Water’s home office in Missoula.
The District Court essentially disregarded the City ordinance *414 and resolution and the vote of the citizens of Missoula on the acquisition of the water system. Apparently it concluded that so long as Mountain Water is running an economical system which is not charging an excessive rate and is furnishing adequate service, there can be no basis for acquisition by the City. The failure of the District Court to consider the vote of the people and the vote of the Missoula City Council makes the issue of necessity solely a matter of economics. Some may consider that to be wise social policy, but that conclusion is not warranted by our statutes. Since Section 70-30-111, MCA, gives the district court the power to determine whether a condemnation is necessary, the votes of the people and the city council cannot be considered as finally dispositive of the issue of necessity. However, we hold that upon remand the public interest as expressed in these votes must be considered and weighed with the other factors in determining whether City acquisition of the water system is necessary. In considering the weight to be given to the votes, the court properly may consider that users outside the City could not vote or express their opinion, if those are the facts. The court may also compare the number and identity of voters with the number and identity of the water users.
Unfortunately Section 70-30-111, MCA, does not set forth all of the issues which are appropriate for consideration on the necessity of taking. A significant argument may be made as to the importance of the City obtaining ownership of the water rights themselves,, in order that the City may assure its inhabitants of long range access to water. It presently appears that the access to such a water source is at least to some extent dependent upon Mountain Water. On remand this element also should be considered and such additional evidence and briefing required as is found to be necessary by the District Court.
Unfortunately there are no statutory guidelines to assist the District Court in weighing the various factors which it must consider. We do point out that the City has the burden to prove by a preponderance of the evidence that the condemnation is necessary, under Section 70-30-111, MCA.
We reverse the judgment of the District Court and remand for reconsideration of all relevant factors, including the vote by the people and the City’s resolution and ordinance.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRI *415 SON and GULBRANDSON and HON. A. B. MARTIN, District Judge, sitting for MR. JUSTICE MORRISON concur.