No. 86-548

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

THE CITY OF MISSOULA, a Montana Municipal Corporation,

Plaintiff/Appellant,

vs

MOUNTAIN WATER COMPANY, a Montana Corporation,
        Defendant/Respondent,

WARREN A. BACHE; LA MARR BALDWIN; JACQUELINE D. BECK; LINDA D DUNN;
DENNIS L. FALK; SHARON R. FRASER, GARY L. FREY; GEORGETTE GERLACH;
et al,

Intervenors/Respondents.

---

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula
               The Honorable Robert M. Holter, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:
                MULRONEY, DELANEY & SCOTT; Dexter L. Delaney,
                Missoula Montana
                Jim Nugent, City Attorney, Missoula, Montana

        For Respondent:
                GARLINGTON, LOHN & ROBINSON; Sherman V. Lohn and
                Susan P. Roy, Co-Counsel, Missoula, Montana
                GOUGH, SHANAHAN, JOHNSON & WATERMAN; William
                Coldiron, Helena, Montana

---

Submitted: April 10, 1987

Decided: September 18, 1987

Filed:   SEP 18 1987

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

This is an eminent domain proceeding for the acquisition of defendant's water distribution business. The Fourth Judicial District Court, Missoula County, held that the City of Missoula (City) failed to prove by a preponderance of the evidence that its acquisition of the business through eminent domain was necessary. The City appealed. We affirm in part, reverse in part, and remand for reconsideration.

The issue appealed is whether the trial court erred in determining what laws are applicable for establishing the City's burden of proof and in weighing the evidence.

Mountain Water Company (Mountain Water) is a Montana corporation, which owns and operates a Missoula water system. The system also provides water for some 4,000 customers outside the city limits of Missoula. Park Water Company of California is the sole owner of Mountain Water. Park Water Company, in turn, is nearly wholly owned by Henry (Sam) Wheeler, also of California. Park Water Company at its California headquarters, in conjunction with the local staff of Mountain Water, manages the Mountain Water system.

Mountain Water acquired the Missoula water system from Montana Power Company in 1979. The Missoula City Council was also interested in buying the water system at that time. However, because of the built-in delays associated with municipal financing, the City was unable to fund the purchase before the sale was made to Mountain Water. Shortly after Mountain Water acquired the water system, the City passed an ordinance authorizing the City Administration to acquire the water system by purchase or condemnation under §§ 7-13-4403 and 4404, MCA.

At the time of Mountain Water's purchase of the system, customers were supplied by surface water from Rattlesnake Creek and water from several wells. The wells supplied approximately 55% of the annual needs, and Rattlesnake Creek supplied the remaining 45%. In 1983, Rattlesnake Creek became infested with giardia. Mountain Water immediately shifted over to the sole use of well water to supply its customers. The City contends that Mountain Water had been forewarned of the danger as much as two years before the outbreak, but that Mountain Water refused to take any preventative action. Mountain Water responds that it was as responsible as possible, having available as its only preventative measure the installation of a filtration system that would have cost between 4 and 5 million dollars, without any guarantee of 100% effectiveness. Mountain Water states that the State Board of Health gave it an unsolicited commendation for its speed in shifting users from Rattlesnake Creek to well water.

Rattlesnake Creek water continues to go unused. Mountain Water has developed additional wells and is currently 100% dependent upon wells for its supply of water. Mountain Water has not relinquished its water rights in Rattlesnake Creek, because the water serves as an emergency source.

In the spring of 1984, the City attempted to negotiate the purchase of Mountain Water. Those negotiations were unsuccessful. In June of the same year, the City adopted a resolution reaffirming its 1979 ordinance and its interest in acquiring the water system. Then, in late 1984, the City brought this condemnation proceeding against Mountain Water. The employees of Mountain Water were allowed to intervene in the action. The question of public ownership of the water system was also submitted to the citizens of Missoula as a

ballot initiative in September 1985. The electorate support-ed acquisition and the initiative passed.

In March 1986, a 4-day trial was conducted before the District Court sitting without a jury. All parties presented testimony and documentary evidence on the economic and other effects of a transfer of the water system from private to public ownership. In August 1986, the court issued its opinion and judgment holding that the City had failed to prove that the condemnation was necessary.

Did the trial court err in determining what laws are applicable for establishing the City's burden of proof and in weighing the evidence?

The City argued below, and again asserts here, that its ordinance and resolution authorizing the acquisition of the water system conclusively establish the necessity of its acquisition of the system. It maintains that § 7-5-4106, MCA, is controlling. That statute provides:

> The city or town council has power to condemn private property for opening, establishing, widen-ing, or altering any street, alley, park, sewer, or waterway in the city or town and for establishing, constructing, and maintaining any sewer, waterway, or drain ditch outside of the corporate limits of the municipality or for any other municipal and public use. The ordinance authorizing the taking of private property for any such use is conclusive as to the necessity of the taking and must conform to and the proceedings thereunder had as provided in Title 70, chapters 30 and 31, concerning eminent domain. (Emphasis supplied.)

Mountain Water argued, and the District Court held, that the controlling statutes are those in Title 7, Chapter 13, Part 44, entitled "Water Supply and Regulation." Their position

4

is that the City ordinance does not establish a conclusive presumption of necessity.

For several reasons, we affirm the District Court's conclusion on which statutes govern. First, the arrangement of these code sections as enacted in 1895 supports the District Court's conclusion. The predecessors of both § 7-5-4106, MCA, and §§ 7-13-4402 through 4404, MCA, originally were numbered paragraphs under Political Code § 4800, Codes of Montana 1895. This is how they appeared:

The city or town council has power:

. . .

64. To contract an indebtedness on behalf of the city or town upon the credit thereof, by borrowing money or issuing bonds for the following purposes, to-wit: Erecting public buildings, sewers, bridges, water works, supplying the city or town with water by contract, the purchase of fire apparatus, the construction or purchase of canals or ditches for supplying the city or town with water . . . provided, that no money must be borrowed or bonds issued for any purpose hereinbefore set forth in this Section, until the proposition has been submitted to the vote of the taxpayers affected thereby of the city or town and the majority vote cast in favor thereof; and, further provided, that an additional indebtedness may be incurred, when necessary, to . . . procure a water supply for the said city or town which shall own or control said water supply and devote the revenue derived therefrom to the payment of the debt as follows: . . . Provided, that whenever a franchise has been granted to, or a contract made with, any person or persons, corporation or corporations, and such person or persons, corporation or corporations, in pursuance thereof and in good faith, have established and maintained a system of water supply, the city or town granting such franchise, or entering into such contract, before taking any action for the procurement of a water supply to be owned or controlled by such city or town, shall, by

5

the passage of an ordinance, give notice to such person or persons, corporation or corporations, that it desires to purchase the plant and franchise of such person or persons, corporation or corporations, it shall have the right to so purchase the said plant upon such terms as the parties may agree; in case they cannot agree then the said city or town may proceed to acquire the same under the laws relating to the taking of private property for public use; provided, that no city or town, having a water supply furnished by private parties, under a contract or franchise, entered into or granted by the city or town, shall proceed to the erection or construction of a water plant to be operated by it, but in case the city or town shall desire to own and operate its water supply, it shall acquire the plant and supply already in operation therein as herein provided.

. . .

75. To condemn private property for opening, establishing, widening or altering any street, alley, park, sewer, waterway, in the town or city, or for any other public use, and the ordinance authorizing the taking of private property for any such use is conclusive as to the necessity of the taking, and must conform to and the proceedings thereunder had, as provided in Title VII., Part III., of the Code of Civil Procedure concerning eminent domain.

. . .

79. To adopt, enter into, and carry out means for securing a supply of water for the use of a city or town or its inhabitants.

. . .

The detailed provisions on water system acquisition in paragraph 64 address 3 different aspects of acquisition of a water supply: issuance of bonds for purchase, negotiations with a franchiser for purchase, and a requirement that an existing water franchise be purchased rather than a new plant

6

constructed. Many of those provisions are now found at §§ 7-13-4403 and 4404, MCA. Paragraph 75 is now § 7-5-4106, MCA. Paragraph 79 is now § 7-13-4402, MCA. There is nothing to indicate that paragraph 75 should govern over the detailed provisions on water system acquisition in paragraphs 64 and 79. The reference to streets, alleys, parks, sewers, and waterways in paragraph 75 is primarily a list of "ways", or uses requiring condemnation of strips of land. A water system is not within the type of items listed. Further, an acknowledged rule of statutory construction states that special statutes will prevail over general statutes. Taylor v. Dept. of Fish, Wildlife & Parks (Mont. 1983), 666 P.2d 1228, 1231, 40 St.Rep. 1112, 1116. Paragraph 75 could be applied to water distribution systems only through its catch-all mention of "any other public use." On the other hand, paragraphs 64 and 79 are concerned specifically with city water supply and regulation, including acquisition of a private water supply system through eminent domain.

In 1902, this Court considered a case in which the City of Helena sought to condemn portions of several water rights for use as a city water supply. In that case, City of Helena v. Rogan (1902), 26 Mont. 452, 68 P. 798, this Court said,

> Another question presented is this: Can water already appropriated to a public use be condemned in eminent domain proceedings for any other use, whether the other use is a more necessary public use or not? Section 2214 of the Code of Civil Procedure provides that: "Before property can be taken it must appear: . . . (3) If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use." It must so appear in the complaint. The use of water to irrigate a farm under the water-right law is a public use. Section 15, art. 3, Const.; Ellinghouse v. Taylor, 19 Mont. 462, 48 Pac. 757. The law permits the condemnation of a

7

water right by a city, as we have seen. Therefore the position taken by respondents, to wit, that water which is being used for any beneficial use cannot be taken for any other use, whether the other use is a more necessary public use or not, is not tenable. Whether the use of water by the city is necessary- that is, whether the city needs a water supply- is for the city, and for the city alone, through its council, to say. Whether it is necessary to condemn the water right in order to supply the city is to be alleged, and is a judicial question to be determined by the court. That it is a more necessary use than that of the ranchman is to be alleged, and by the court judicially determined. If it were not, then not only could a city condemn and take the water from a ranchman owning and irrigating 160 acres of land, but could, on its own allegation of superior necessity, condemn and take the water from another and a neighboring city, and leave it dry. And here again we may, in passing, say that the necessity for a complete description of the property to be taken is necessary, to the end that the court may see that the proposed use is superior in point of necessity to the present public use.

Rogan, 68 P. at 802. The predecessor of § 7-5-4106, MCA, was neither applied nor even mentioned. The questions of necessity and "more necessary use" were questions for judicial determination.

For all of the above reasons, we affirm the District Court's conclusion that the City ordinance does not establish a conclusive presumption that the taking is necessary. The controlling statutes in this case are §§ 7-13-4401 through 4406, MCA, and those parts of Title 70 incorporated therein by reference. We therefore continue our analysis under those statutes.

Under § 7-13-4403, MCA, the City properly exercised its right of offering to purchase the water system. Where, as here, there is no agreement to purchase, § 7-13-4404, MCA, provides that the City "shall proceed to acquire the plant or

8

water supply under the laws relating to the taking of private property for public use." Section 70-30-111, MCA, sets forth the standard of proof and the facts which must be found before private property may be taken for a public use:

> Before property can be taken, the plaintiff must show by a preponderance of the evidence that the public interest requires the taking based on the following findings:
> (1) that the use to which it is to be applied is a use authorized by law;
> (2) that the taking is necessary to such use;
> (3) if already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use;
> (4) that an effort to obtain the interest sought to be condemned was made by submission of a written offer and that such offer was rejected.

In this case, the requirement under part (1) is met by § 7-13-4402, MCA, which authorizes a municipal water system. The requirement of part (4) has been met by the submission of a written offer for the system and the rejection of that offer.

The District Court must determine, under part (2), whether it is "necessary" that the water system be taken by the City. This Court has defined "necessary" under this statute as a reasonable, requisite, and proper means to accomplish the improvement. State etc. v. Standley Bros. (Mont. 1985), 699 P.2d 60, 62, 42 St.Rep. 563, 565-66. We recognize that two questions are involved: 1) Is it necessary that the City have its own water system? and, 2) Must the City take Mountain Water's property in order to have its own system? Unlike the typical case involving condemnation of land for a highway, the first question here is not whether it is necessary to have the improvement, but whether it is

9

necessary to have the improvement operated by the City instead of by private industry.

Under part (3), the District Court must determine whether the proposed use is "more necessary" than the present use. That the water already has been appropriated to a public use cannot be disputed given the broad interpretation of 'appropriation to a public use' in the eminent domain statutes. See §§ 70-30-102 and 203, MCA. In State ex rel. Smart v. City of Big Timber (1974), 165 Mont. 328, 528 P.2d 688, this Court determined that it was "more necessary" that city-owned property between a sidewalk and the boundary of a schoolyard be condemned for the purpose of erecting a fence than that the property continue in the existing public use. In doing so, the Court weighed the benefits to be derived from erecting the fence against the impairments to the existing use of the land. While not dispositive in the present case, Smart illustrates the broad range of considerations in determining whether a proposed public use is more necessary than the present use.

The District Court made detailed findings listing its reasons for concluding the City did not prove it was necessary that it acquire the water system. The court's first finding considers the effects on Mountain Water employees of a takeover by the City. The undisputed record shows that the City would make reductions in the number of personnel and also reductions in the pay scale of the remaining employees in order that the employees would be paid salaries comparable to other City employees. We do not agree with the District Court conclusion that the "City's calloused plan for Mountain Water's twenty-six employees, standing alone, is enough to defeat a finding of public necessity." We hold that the effect on Mountain Water employees is one factor to be

considered in determining whether the acquisition is necessary, but that factor alone is not dispositive.

The City submitted evidence to the District Court on the feasibility and cost of constructing a plant for treatment of Rattlesnake Creek water. It contended that Mountain Water was remiss in failing to construct such a plant after the giardia outbreak. The District Court found that use of Rattlesnake Creek water is not necessary. After reviewing the record, we conclude that substantial evidence supports the District Court's finding. This evidence includes an admission that a treatment plant which is 100% effective against giardia is not technically feasible, and evidence that there is an abundance of well water available from Missoula's underground aquifer. We conclude that the City's evidence on construction of a water treatment plant is therefore irrelevant to the issue of whether the taking of the Mountain Water system by the City is necessary.

We also do not agree with the conclusion of the District Court that the "prejudicial issues" of profit and out-of-state ownership "demeans the whole process." We do not find any legal basis for excluding these facts from consideration on the issue of necessity. We conclude these issues are pertinent to the determination of whether the public interest requires the taking under § 70-30-111, MCA, as it has been broadly drafted and defined. In the absence of a declared policy by the Legislature giving greater or lesser weight to public ownership as compared to private ownership of a water system, these issues must be considered and weighed by the trial court on remand.

We conclude that the court's remaining findings are supported by the evidence and are appropriate for consideration in evaluating whether City operation of the water system

11

is a "necessary" use of the system. These include findings on public savings, on rates and charges, on cooperation between Mountain Water and the City, and on the effect of having Mountain Water's home office in Missoula.

The District Court essentially disregarded the City ordinance and resolution and the vote of the citizens of Missoula on the acquisition of the water system. Apparently it concluded that so long as Mountain Water is running an economical system which is not charging an excessive rate and is furnishing adequate service, there can be no basis for acquisition by the City. The failure of the District Court to consider the vote of the people and the vote of the Missoula City Council makes the issue of necessity solely a matter of economics. Some may consider that to be wise social policy, but that conclusion is not warranted by our statutes. Since § 70-30-111, MCA, gives the district court the power to determine whether a condemnation is necessary, the votes of the people and the city council cannot be considered as finally dispositive of the issue of necessity. However, we hold that upon remand the public interest as expressed in these votes must be considered and weighed with the other factors in determining whether City acquisition of the water system is necessary. In considering the weight to be given to the votes, the court properly may consider that users outside the City could not vote or express their opinion, if those are the facts. The court may also compare the number and identity of voters with the number and identity of the water users.

Unfortunately § 70-30-111, MCA, does not set forth all of the issues which are appropriate for consideration on the necessity of taking. A significant argument may be made as to the importance of the City obtaining ownership of the

12

water rights themselves, in order that the City may assure its inhabitants of long range access to water. It presently appears that the access to such a water source is at least to some extent dependent upon Mountain Water. On remand this element also should be considered and such additional evidence and briefing required as is found to be necessary by the District Court.

Unfortunately there are no statutory guidelines to assist the District Court in weighing the various factors which it must consider. We do point out that the City has the burden to prove by a preponderance of the evidence that the condemnation is necessary, under § 70-30-111, MCA.

We reverse the judgment of the District Court and remand for reconsideration of all relevant factors, including the vote by the people and the City's resolution and ordinance.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

_____
District Judge A.B. Martin
sitting for Justice Frank B.
Morrison, Jr.

13

Mr. Justice John C. Sheehy, dissenting:


I dissent and would affirm the District Court which found that the City of Missoula had not carried the necessary burden of proof in this cause.

I do agree with the majority that the statutes which apply to the acquisition of a private water supply system by a municipality and which apply in this case, are §§ 7-13-4403, 7-13-4404, MCA, and by reference in § 7-13-4404, also the statutes relating to eminent domain. The contention of the city, that under § 7-5-4106, its ordinance authorizing the taking of the private water system of Mountain Water Company was conclusive is properly refuted in this cause.

The question of necessity in this case remains for determination by a court under eminent domain procedures. The statutes authorizing a city to operate a water supply system do not grant to a city council or commission the frightening power to take by itself conclusive action in condemning the property of another. I say frightening because city utilities may levy charges without regulation by the Public Service Commission, and may raise those charges up to 12% per year. Section 69-7-101, MCA.

I part from the majority in their determination of how the condemnation statutes are to be applied to this type of attempted condemnation, and from their determination that the District Court erred in considering the factors upon which it did rely that no necessity was shown here.

First, § 7-13-4404, MCA, requires that when a municipality is unable to acquire a private water supply system by offering to purchase the same, then it may proceed to acquire the plant or water supply "under the laws relating to the taking of private property for public use."

- 14 -

The majority say that public ownership versus private ownership is a factor of necessity to be considered in this case. Where the majority stray into error is their implicit assumption that the City of Missoula, as a governmental entity, stands in a better position as a condemnor for purposes of public use than Mountain Water Company, a private corporation. No such distinction is made in our statutes. Instead, in providing for eminent domain procedures, § 70-30-102, MCA, enumerates what a public use is, and that the right of eminent domain may be exercised in behalf of such public uses. Any entity, governmental, corporate, or private, which devotes property to a duty described as a "public use" under § 70-30-102, has the further right to become a plaintiff in an eminent domain proceedings to acquire property for such public use. Thus, § 70-30-203, MCA, provides that the plaintiff may be a corporation, association, commission, or person in charge of the public use for which the property is sought. The right of Mountain Water to condemn property when necessary is equal to the right of the City to condemn. This case is not the stage on which to debate public ownership versus private ownership of property. Public ownership of Missoula's water supply system cannot be a factor of necessity, because all condemnors, whether public or private, stand on equal footing before the law in condemnation proceedings.

"Public use" includes flumes, ditches or pipes conducting water, heat or gas for the use of the inhabitants of any county, city or town. Section 70-30-102(3), MCA. The property that Mountain Water Company devotes to such public use is already "appropriated" to such use, though it may never have been acquired through condemnation proceedings. Under our statues, if property is already appropriated to public use, whether or not it originated in such use by

- 15 -

condemnation, such property is not thereby insulated from further condemnation. Though already appropriated to some public use, the property may be condemned if the public use to which it is to be applied after condemnation is a more necessary public use. Section 70-30-111, MCA.

As between the City of Missoula and Mountain Water Company, therefore, as entities using or proposing to use property for a public use, there is no distinction as to powers. Each has an equal right of condemnation, and if one desires to acquire property of the other that is already devoted to a public use, it must show by a preponderance of the evidence that the public interest requires a taking based on a finding that the "public use to which it is to be applied is a more necessary public use." Section 70-30-111(3), MCA.

Thus, in this case, the burden of proof rested on the City of Missoula in its proceeding before the District Court, to establish by a preponderance of the evidence the fact question of greater necessity. That necessity is a fact issue to be proven has long been the rule in this state. State ex rel. Livingston v. District Court (1931), 90 Mont. 191, 196, 300 P. 916, 918.

When there are before the court two entities devoting or proposing to devote the same private property to a public use, if the property is already devoted to a public use, the question of fact on necessity becomes, is the proposed use more necessary than its present public use? Section 70-30-111(3), MCA, is not limited to a situation where the condemnor proposes to devote the property to a different public use. A proposal to utilize the property for the same public use must still be found to be more necessary. That point was decided in Butte-Anaconda Pacific Railway Company v. Montana Union Railway (1895), 16 Mont. 484, 41 P. 248.

Before a court issues its preliminary condemnation order, the public interest in the taking is a factor for the court to determine as well as whether the condemnor, in this case, has proved that the taking is a more necessary public use. Section 70-30-206(2), MCA, provides:

> If the court finds and concludes from the evidence presented that the public interest requires the taking of such interest in real property and that the plaintiff has met his burden of proof under 70-30-111, it must forthwith make and enter a preliminary condemnation order . . . (Emphasis added.)

If the findings of the District Court here are considered in the light of the proper construction of the condemnation statutes where the City is proposing to take over a private water supply system, it is clear that the findings and conclusions of the District Court in this case support its denial of a condemnation order. Unless the findings of fact of the District Court are clearly erroneous, we cannot set aside or ignore them. Rule 52(a), M.R.Civ.P. Those facts include the following:

Three private water companies presently supply water to Missoula, of which Mountain Water is one. Mountain Water serves 16,201 customers of which 4,481 live outside the city limits.

The court found that Mountain Water employs 26 people to operate its Missoula system and the smaller Superior, Montana, system. The city proposed to eliminate 6 of the present top jobs and replace them with city employees. The remaining 20 employees of Mountain Water would suffer drastic salary reductions because their pay scales would be based on city employees' pay schedules and not that of the private employer Mountain Water. The city claimed a total savings of $280,639 per year because of the reduction of pay of 20

- 17 -

people for a total savings of $117,656 and the replacement of 6 people by present city employees for a savings of $162,983. The court found this proposal to be "personally and publicly catastrophic" explaining that some would leave their jobs, the key jobs would have the greatest cuts in pay and it was impractical to expect the city to accomplish, without cost to the city, the jobs of Mountain Water manager and other staff heads. The court further found that there was no evidence that public employment makes a public worker more efficient; and that Mountain Water's present ratio between water connections and employees is lower than most similar water supply systems in Montana. He found loyalty in the present Mountain Water employees to their employer and satisfaction with their present working arrangements. If a complete disruption in the present management of the water system, the elimination of 6 management jobs, and drastic reductions in pay to the remaining 20 employees do not affect the public interest in Missoula in a dispositive way, public interest must have become a fiction to this Court.

The city claimed that during the first five years of its operation of the water system, water subscribers would enjoy savings of $3.5 million. The District Court found that the purported savings were based upon an unsupported assumption that the city could purchase Mountain Water Company for $11 million. The owner valued his property at $19 million. The city appointed no appraiser and offered during the hearing no appraisal of the fair market value of the Mountain Water system. The District Court found that the city could not guarantee that future city administrations would not increase water rates during the next five years because the city's other assumptions were understated.

The city claimed that Rattlesnake Creek water was necessary to the operation, and that if it obtained the

property, it would immediately install a filter plant for the elimination of giardia cysts. The cost of an adequate filter plant would be $4-5 million. However, the court found that such plants do not assure complete elimination of giardia cysts, and that well water, now produced by Mountain Water Company, was a better alternative to the cyst problem. The District Court also rejected the city's claim that Rattlesnake Creek water had to be utilized to assure that the Missoula aquifer was not depleted. The court found that the aquifer under the Missoula valley was one of the best in the United States and is continually recharged.

Hence the city raised the issue of the Rattlesnake Creek water as a matter of necessity. The District Court is completely supported in the record that if such water should be used, a filtration plant would not safeguard against giardia cysts and its cost was not justified. The city having failed to prove its own issue, the majority now find that it was irrelevant anyhow, and send the case back with the implicit direction to try something else. I leave it to others to explain that determination. Perhaps we will continue to reverse this case until the city gets it right.

This Court held in City of Helena v. DeWolfe (1973), 162 Mont. 57, 508 P.2d 122, that a claimed future need which is highly speculative will not support necessity and that the "necessity" for the taking must be shown as a reasonable need with foreseeable ability to complete the project.

The city claimed that it could eliminate Mountain Water's $350,000 annual home office expense (its home office is in California). This purported savings was rejected by the District Court which found that the Mountain Water home office supports the Missoula operation by providing planning, finances, consultation, engineering and management for which the city would have to find a substitute.

The city claimed it could operate Mountain Water with $500,000 in yearly capital improvements. Mountain Water projects approximately $1.5 million each year for such improvements. The District Court found that Mountain Water projections of $500,000 for capital improvements was unrealistic.

If the city were granted condemnation, it would be required to finance the purchase by incurring bonded indebtedness. The city claimed its cost of finance would be cheaper for it than for Mountain Water. Again the District Court determined that if the fair market value of Mountain Water supply system fixed by the condemnation jury were between $11 million and $19 million, the entire economic projections of the city became untenable and any purported savings a myth. The majority opinion does not discuss this facet of the city's case but it is clear that the court's negative findings on the projected savings and operation were irrefutable.

The city claimed a reduction in the rates to the water users would result because the plant and property under a governmental entity would not be taxed. However, the District Court rejected this claim saying that the savings in property taxes would simply be shifted to other property tax payers, some of whom live outside the city in the county of Missoula. Moreover the District Court found that equity and debt financing used by Mountain Water were equally advantageous to water users.

There are a number of other findings, but the foregoing suffice to show the District Court carefully considered the public interest in the matter and determined under the facts shown, the city had failed to prove by a preponderance of the evidence that the taking was necessary. The District Court did not specifically refer to the term "more necessary" but

- 20 -

its conclusion that the taking was not necessary under the facts more than supports the conclusion that the taking was not "more necessary."

Finally this Court goes afield on a factor relating to necessity that is demonstrably improper. The majority contends that the fact that the city electors voted to take over the water supply system, or that the city council so acted, is a factor proving necessity. There is no statutory basis for such position. Section 7-13-4403, MCA, provides that the passage of the ordinance by the city council is simply <u>notice</u> to the owner of the water supply system that the city <u>desires</u> <u>to</u> <u>purchase</u> the water supply system. There is no provision in the statutes for a vote by the electors on whether a water system should be acquired by a city. The action of Missoula in submitting the matter to the voters was simply gratuitous. The majority opinion is silent as to any factor or facet of the necessity issue that would be proved or disproved by a vote of the city council or the city electors. The vote is irrelevant unless this Court is of the opinion that necessity is determined by majority vote.

Every salient factor found by the District Court which really relates to a "more necessary use" issue is approved in the majority opinion as supported by the evidence. They approved the findings on "public savings, on rates and charges, on cooperation between Mountain Water and the city, and on the effect of having Mountain Water's home office in Missoula." The majority agree that the District Court was correct with respect to Rattlesnake Creek water use. These (except for the effect on employees) are the only factors which relate to whether the city's proposed condemnation is "more necessary." On retrial the District Court must take these factors as already concluded. There is not much room left for the District Court to weigh the votes of the city

- 21 -

and the council, out-of-state ownership, and whether a profit is sinful, as matters of public interest.

I am in the dark about the meaning of the majority relating to water rights. If the reference includes Rattlesnake Creek water rights held by Mountain Water, those rights have no place in this case in light of the majority finding of irrelevance. Only property "used and useful" to the operation can properly be condemned.

Whether considered by the viewpoint of "necessary," or "more necessary," the city's case does not hold water. We should affirm the District Court.

John C. Sheehy
_____
Justice

Hon. Robert W. Holmstrom, District Judge, sitting for Justice Hunt, Dissenting.

I dissent. I would reverse the District Court and direct the District Court to issue a preliminary condemnation order.

I am of the opinion that the City is entitled to the conclusive presumption of necessity contained in §7-5-4106, MCA. My opinion is based upon the nature and attributes of the power of eminent domain and upon the statutory history.

The power of eminent domain is an inherent attribute of the state's sovereignty. Butte, Anaconda & Pacific Ry.Company v. The Montana Union Ry. Company, 16 Mont. 504, 536, 41 St.Rep. 232 (1895). The Legislature alone has the ability to delegate the power of eminent domain, State Highway Commission v. Crossen-Nissen Co., 145 Mont. 251, 400 P.2d 283 (1965), and has done so freely, granting the power to private corporations, such as railroads; to quasi corporate bodies, such as cemetery associations; to the executive branch of government, through administrative agencies such as the highway department; and to local government.

The Legislature has also granted to certain condemnors presumptions of necessity; the presumption varies in proportion to the degree of popular control exercised by the people of Montana over a particular condemnor. Thus, private entities, over which the public exercises no control, are granted no presumption of necessity. They are required, in the exercise of the power, to prove necessity pursuant to §70-30-111, MCA.

The State Highway Department is an administrative agency of state government. The Governor guides departmental policy by appointing its director. The Governor is elected by the people, the people thus indirectly exercise control over the department's actions. Accordingly, the Legislature has granted the department a disputable presumption of necessity, so that the department's order, pursuant to §60-4-104, MCA, when presented at the necessity hearing, establishes a prima facie case of the public necessity of the proposed highway or improvement.

Finally, cities and towns are granted a conclusive presumption of necessity, whereby the city ordinance authorizing the taking of private property establishes necessity. The ordinance is passed by the local legislative body, popularly elected by the citizens of the city or town, and over which those citizens exercise direct control through the ballot

23

box. Recalling that "all political power is vested in and derived from the people" (Article II, §1, Montana Constitution), the grant of a conclusive presumption to an ordinance passed by the city council is neither unexpected nor shocking.

The majority seeks to buttress its conclusion that §§7-13-4402, through 4404, MCA, control this action by citing the relative arrangement of the statute in the Code of 1895. This argument, however, ignores the fact that the predecessor to §7-5-4106 was a feature of Montana law from territorial times, prior to when the sections which would become §§7-13-4403 and 4404 were first enacted in 1895. The Legislature is presumed, when enacting new legislation, to act with full knowledge of existing law. Thiel v. Taurus Drilling Limited, 1980-II, ____ Mont. ____, 710 P.2d 33, 42 St.Rep. 1520, (1985). A law passed with that knowledge is presumed not to abrogate an existing law, unless the two are absolutely repugnant to each other. London Guaranty & Accident Co., Ltd. v. Industrial Accident Board, 82 Mont. 304, 310, 266 P.d 1103 (1928). This Court is obliged to harmonize statutes relating to the same subject, giving effect to each. Crist v. Segna, ____ Mont. ____, 622 P.2d 1028, 38 St.Rep. 150 (1981). The application of these rules of statutory construction dictate the conclusion that the Legislature intended the conclusive presumption of necessity found in what is now §7-5-4106, MCA, to apply to actions brought by a city to acquire a water supply system.

The majority also justifies its rejection of the application of §7-5-4106, MCA, because the statute does not specifically refer to a water supply system. The language contained therein "any other municipal and public use" is "catch-all" language commonly used by legislators in Montana and elsewhere because of the impossibility of predicting, with perfect clarity, all the factual variations to which a law applies. This language evidences the Legislature's intention that the provisions of the statute, including the conclusive presumption of necessity, are to apply to actions other than those seeking to acquire property for the specific purposes mentioned therein. The majority refuses to attach any purpose to the language "any other municipal and public use" and restricts the application of the statute to those purposes specifically mentioned therein. In effect, the majority states that if the city wishes to condemn a street or alley, it is entitled to a conclusive presumption of necessity, but if it desires to acquire a water distribution system under the street, it has no presumption.

24

The majority fails to recognize the distinction between "necessity" and "necessary" as those terms are used in eminent domain proceedings. "Necessity" as used in eminent domain proceedings generally refers to the need for the improvement itself. In §70-30-111, MCA, necessity is described as the "public interest". "Necessary" as used in (2) of §70-30-111, MCA, has been defined as a "reasonable, requisite and proper means to accomplish the improvement." State ex rel. Department of Highways v. Standley Bros., 699 P.2d 60, 42 St.Rep. 563 (1985). There should be no question but what the water supply system owned by Mountain Water is reasonable, requisite and proper to accomplish the improvement, that is, the ownership by the City of the water supply system. The Legislature, when it granted authority to the City to acquire a water supply system owned by another entity, made a determination in accordance with (3) of §70-30-113, MCA, that the ownership of the water supply system by the City was a more necessary public use than the ownership of the water supply system by Mountain Water.

District Judge Robert Holmstrom
sitting for Justice William E. Hunt

25