No. 83-514

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

GEORGE SMITH and WILLIAM SMITH,

        Plaintiffs and Respondents,

  -vs-

LARRY W. MORAN, ROBERT P. REISER,
RICHARD MILLER, PAULA MILLER, RONALD
PORTNELL and BETTY PORTNELL,

        Defendants and Appellants.

---

APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Monte D. Beck argued, Bozeman, Montana

    For Respondent:

        David L. Holland argued, Butte, Montana

---

Submitted:  NOV 13 1984

Decided:  JAN 4 - 1985

Filed:  JAN 4 - 1985

*Ethel M. Harrison*

---

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Defendants Larry Moran and Robert Reiser appeal from judgments entered against them following a jury trial in the District Court of the Eighteenth Judicial District, Gallatin County. The Portnells settled with plaintiffs prior to the conclusion of trial. The Millers were not affected by the judgment and therefore are not parties to this appeal.

We reverse the judgments against Moran and Reiser and remand for a new trial.

Defendants Moran and Reiser are developers of a subdivision located south of Bozeman, Montana, known as the Little Bear Subdivision. Development began in late 1978, and has been carried out in accordance with state law and local regulations pertaining to subdivisions. Development included the construction of several roads within the subdivision at a cost of approximately $90,000 to the developers.

The Gallatin County Board of Commissioners conditionally approved a preliminary plat of the subdivision on December 6, 1978. A final plat was submitted for consideration and approval by the Board of Commissioners on May 2, 1979. No final approval of the plat was given at that time. The submitted final plat included a dedication by the developers granting "the lands included in all the streets" of the subdivision "to the use of the public forever." The accuracy of the submitted plat was then reviewed by land surveyors, and the county commissioners approved the final plat on May 24, 1979.

Also on May 24, 1979, the commissioners and defendants entered into a reservation agreement concerning the subdivision streets. The agreement arose as a result of the

2

developers' concern that landowners adjacent to the subdivision might utilize subdivision roads without incurring any associated costs, and might also develop their properties in a way incompatible with development in Little Bear Subdivision. The agreement provided that one foot of land area in all subdivision streets immediately adjacent to the exterior boundaries of the subdivision were reserved from the dedication included in the final plat. The reservation could be voided by the county commissioners upon request of the subdivision developers, or at such time as the commission determined voidance to be in the public interest for the purpose of ensuring good traffic circulation. Although the final plat was filed with the clerk and recorder on May 25, 1979, the agreement was not filed until May 30.

Plaintiff George Smith owns a ranch adjacent to the west boundary of Little Bear Subdivision. In July, 1979, he sold approximately 20.001 acres of the east portion of his ranch to his brother, William Smith. This parcel was subsequently split into two parcels, with William Alverson receiving one. Both parcels appear to be destined for residential use. This transfer has been criticized by defendants as having been accomplished in violation of state and local subdivision laws. However, no attempt has been made to determine if the transfers were indeed illegal.

It was in July that plaintiffs and defendants began having a dispute concerning access through the subdivision. Moran and Reiser apparently had no objection to George Smith occasionally crossing subdivision property for agricultural purposes. They did, however, object to access to the tracts conveyed by George Smith to his brother William. Relying upon the reservation agreement, Moran and Reiser wrote George

3

Smith in late July informing him that, on account of the reservation agreement, Smith did not have a right to cross any portion of the reserved one foot strip to gain access to the subdivision streets. However, defendants offered access if Smith would agree to help pay construction costs for the roads, approximately $5,766, as well as a pro-rata share of road maintenance costs. Although the streets had been dedicated to public use, the county was apparently not responsible for maintenance of any kind. Defendants also wanted Smith to agree to other conditions respecting development on the tracts conveyed to William Smith and Alverson.

The parties could not agree on these terms, and both George and William Smith proceeded to use the streets and cross the reserved strip at will, although they had other access to their property. Relying upon the reservation agreement, defendants attempted to bar access across the reserved strip. A gate on the fence running between the Smith-Little Bear property line next to Lot 18 of the subdivision was locked, but the Smiths cut the fence and, at other times, simply drove over it. Defendants erected an earthen berm across another access point, but the Smiths avoided this obstruction by crossing the fence at other points along the property line. Access continued virtually unabated up to and through the time of trial.

In August, 1979, the county commissioners, acting on advice of the county surveyor and a deputy county attorney, unilaterally rescinded the reservation agreement, ostensibly because the agreement was contrary to state laws dealing with abandonment of county roads. Although the resolution rescinding the agreement was filed with the clerk and recorder, defendants claim that they received no actual notice of the

4

rescission, and further claim not to have learned of the rescission until some time shortly before trial. The rescission resolution does not appear in the official county file on the Little Bear Subdivision.

In December, 1979, George and William Smith filed suit against Moran, Reiser and Richard and Paula Miller, owners of one tract in the subdivision, seeking damages stemming from blocked access to the subdivision streets, and declaration of a prescriptive easement across several of the tracts in the subdivision, including the one owned by the Millers. The complaint was subsequently amended to add the Portnells, owners of Lot 18 adjacent to George Smith's property. The Portnells cross-claimed against Moran and Reiser for compensation in event plaintiffs secured a judgment against Moran and Reiser. Despite attempts to settle the access problem, the case eventually went to trial. Prior to its conclusion, the Portnells reached a separate settlement with plaintiffs.

The jury returned a special verdict against plaintiffs on the claim for a prescriptive easement, but rendered a verdict for plaintiffs on the separate claim for damages due to blocked access. Together, Moran and Reiser were assessed $22,000 in actual damages and $20,000 in punitive damages. Judgment was entered to that effect. Defendants appeal.

The following issues are presented for review:

(1) Whether the trial court erred by prohibiting introduction of evidence of alleged violations of subdivision laws and regulations by plaintiffs?

(2) Whether the trial court committed reversible error in its instructions to the jury respecting the reservation agreement?

5

(3) Whether the trial court erred in its refusal to instruct the jury on the law of rescission?

(4) Whether the award of damages is supported by substantial evidence?

We find that, upon consideration of the first three issues, reversal of the judgments against defendants and remand for a new trial are warranted. We therefore do not reach the fourth issue concerning damages.

I.

Because of our decision to reverse, we must first address defendants' argument that, in the event of reversal, plaintiffs have no basis for bringing their complaint, and should not be permitted to proceed against defendants.

The gist of defendants' argument is that George and William Smith have violated state and local subdivision laws in the process of George Smith transferring land to his brother and William Alverson, and that they have done so intentionally. As a consequence, defendants contend that they may not bring suit for access across the one-foot strip bordering Little Bear Subdivision, because the right of access implicitly sanctions the existence of plaintiffs' own illegal acts with respect to their lands. Defendants attempted to offer evidence of plaintiffs' allegedly unlawful acts, but the trial court barred it from introduction.

On appeal, defendants maintain that the judge should have permitted introduction of the offered evidence, but confuse their discussion of the issue with an extensive factual and legal analysis of the plaintiffs' actions, and conclude by asking this Court to reverse the judgment and dismiss plaintiffs' complaint with prejudice on account of

6

their illegal activities. This we cannot do, for it is not the province of an appellate court to try issues which were never considered by the jury. We can, however, consider those portions of defendants' argument which related to whether the trial court should have permitted the jury to consider evidence of plaintiffs' activities respecting their properties.

There is nothing in Montana subdivision law which prevents an individual who has developed his property contrary to that law from pursuing a claim for relief against an adjoining subdivision for right-of-access. One who violates state laws or local regulations pertaining to subdivisions is guilty of a misdemeanor and is subject to fine and/or imprisonment. Section 76-3-105, MCA. Furthermore, the county attorney in the county wherein the alleged illegal transfers of land have been made is charged to enjoin further sales or transfers and compel compliance with all relevant provisions of subdivision law. Section 76-3-301(3), MCA. If plaintiffs in the instant case have violated the subdivision laws, whether intentionally or not, it rests with public authorities to deal with any improprieties separate from the immediate lawsuit. The trial court was correct in excluding defendants' offered evidence of illegality, as it would have been irrelevant to the access issue and could conceivably have confused the jury. Thus, on remand, defendants will again be barred from raising the allegations against plaintiffs.

II

Appellants next contend that the trial court erred in giving to the jury its Instructions No. 8 and No. 10, quoted as follows:

> "You are instructed that George Smith and William Smith are owners of land that abuts or is immediately adjacent to the Little Bear Subdivision and that they have, as abutting owners, a special right, distinct from the rights of the general public, to use the roads located within the Little Bear Subdivision to gain access to their property." (Instruction No. 8.)

> "You are instructed that the attempted one foot reservation from dedication of the public roads located within the Little Bear Subdivision was ineffective and void since such change was not made part of an amended plat to be submitted for public notice and hearing, and because the statutory procedures for vacating or abandoning the public roadway were not followed. You may consider the defendants' actions concerning the agreement with the County Commissioners in determining whether they acted innocently or in good faith or whether they acted maliciously." (Instruction No. 10.)

We find that both instructions amount to an incorrect statement of the law.

The District Court's admonition in Instruction No. 10 regarding the applicability of abandonment statutes is in error. The evidence establishes that subdivision residents are solely responsible for costs of construction, maintenance, and snow removal regarding Little Bear streets. A Gallatin County surveyor offered the uncontroverted testimony that subdivision streets are not recognized as county roads. No evidence was presented indicating that the Little Bear streets had been established as county roads as required by

8

sections 7-14-2601 through -2615, MCA. Thus the abandonment procedures outlined in section 7-14-2615, MCA, do not apply.

And if the subdivision streets were to be considered county roads, the reservation agreement does not constitute an abandonment under section 7-14-2601(3)(b), MCA. That statute defines abandonment as "cessation of use of right-of-way . . . with no intention to reclaim or use again." Future public use is specifically contemplated within the terms of the reservation agreement.

In addition, the statement in Instruction No. 10 that the reservation agreement was void because it was not made part of an amended plat submitted for public hearing may be inappropriate upon retrial, depending on the evidence introduced. This instruction appears to be based on Gallatin County, Mont. Subdivision Reg. 16.2, regarding amendments to final plats. We simply note that this regulation requires only that amendments which materially alter the final plat, and place the plat in nonconformance with Gallatin County Subdivision Regulations, must be submitted for public hearing.

Although Instruction No. 10 contained significant error, the giving of Instruction No. 8 further compounded the problem. The statement in Instruction No. 8 that the Smiths, as abutting owners, had a special right distinct from that of the public to use the subdivision streets to gain access to their property, is a misreading of the law. The instruction is largely based on Gallatin County, Mont., Subdivision Reg. 4.4.2, which provides that "when a new subdivision adjoins unsubdivided land and reasonable access thereto must pass through the new subdivision, streets and rights-of-way shall be provided as to allow suitable access to the unsubdivided

9

land." In the instant case, there was evidence that plaintiffs had ample alternative access to their property, and no evidence to suggest that access across the subdivision was essential as contemplated by the local regulation.

Also cited as authority for the instruction was our decision in Wynia v. City of Great Falls (1979), 183 Mont. 458, 600 P.2d 802. Wynia involved the closure of a portion of a public street by the City of Great Falls, Montana. A question on appeal was whether landowners abutting the street had a property interest, unique from that of the general public, in access via the closed street to their lot from the nearest intersection in both directions. We ruled that any unique property interest in abutting landowners is limited to the right only to adequate access necessary to connect the landowner to the general street system. Wynia, 183 Mont. at 472, 600 P.2d at 810. In denying plaintiffs damages, our analysis in Wynia focused on whether reasonable access to the complaining landowner had been preserved despite the city's street closure. Wynia, 183 Mont. at 473, 600 P.2d at 811. In the instant case, the plaintiffs-respondents had a special right of access via the Little Bear Subdivision roads only if they had no other adequate access to their property, and the jury should have been so instructed.

III

There is no question that the reservation agreement was rescinded by the county commission in August of 1979. A key aspect of defendants' case was that they had no notice of the rescission for almost four years and their attempts to block access to the subdivision streets were allegedly made in good faith reliance on the existence of the reservation agreement.

Under Montana law, rescission of a contract requires mutual assent of the parties to that contract. Cruse v. Clawson (1960), 137 Mont. 439, 446-447, 352 P.2d 989. It is clear that although no written notice is required, both parties must assent to and be aware of the rescission in order for it to be effective. Small v. Coca-Cola Bottling Co. (1958), 134 Mont. 168, 173, 328 P.2d 124, 126. See also Stovall v. Publishers Paper Co. (Or. 1978), 584 P.2d 1375, 1377 (rescission of contractual agreement requires notice to opposing party).

In the instant case, the trial court did not instruct the jury on any aspect of rescission. We note, however, the existence of evidence in the record which suggests that the jury should have been instructed more clearly on this issue.

Both Moran and Reiser testified that they did not learn of the rescission by resolution until after the pre-trial conference, approximately six weeks before trial. There is nothing on the face of the resolution rescinding the agreement to indicate that the county commission gave notice to Moran and Reiser regarding the decision to rescind, and apparently no meeting was held with either Moran or Reiser in August, 1979 regarding the rescission.

And although the reservation agreement provided that the commissioners had authority to void the agreement when they deemed it to be in the public interest for the purpose of establishing good traffic circulation, there is no indication in the resolution that the commissioners were employing that authority in abandoning the agreement. The resolution does make reference to a recommendation by Gallatin County Engineer Robert Babb and Deputy County Attorney Byron Dunbar, that the agreement be rescinded. About one month prior to

11

the rescission, Babb maintained that the reservation agreement appeared to be void because of the failure to follow abandonment procedures for county roads. In a memorandum to the county commission, Dunbar indicated that Babb's position was "well taken" and implied that the reservation agreement should be re-examined. There is no evidence that Moran or Reiser were aware of or had received a copy of Babb's letter. There is a notation on the second page of Dunbar's memorandum indicating that Moran was to receive a copy of the memorandum, but there is no evidence that Moran received a copy.

Neither the Babb letter, the Dunbar memorandum, nor the rescission resolution appear in the official county file on the Little Bear Subdivision, although the resolution was filed with the county clerk and recorder. During a meeting with county commissioners in late 1982 on the subject of completing some roads in the subdivision, there was a conversation about the lawsuit, and Moran apparently mentioned the existence of the agreement. The commissioners disclaimed knowledge of it. When Moran sent a copy of the agreement to one of the deputy county attorneys, he was informed that the agreement was indeed on file, but was told that "on the advise [sic] of [the county attorney's] office and the road department," the commission had been told that the agreement had no "force and effect." The letter to Moran does not mention rescission.

We find sufficient evidence in the record to indicate that the jury should have been instructed that actual notice of the rescission was required and that it was entitled to weigh the evidence and determine whether notice was received by defendants, such that the jury could determine whether defendants' attempts to block access to the subdivision

12

streets were made in good faith reliance on the existence of the reservation agreement.

IV

The judgments entered against defendants Larry Moran and Robert Reiser are reversed, and the cause is remanded to the District Court for new trial.

_____
                Justice

We concur:

_____
            Chief Justice

_____

_____

Mr. Justice Daniel J. Shea specially concurring:

Although I do not agree with all that is said in the opinion, I join in the order granting a new trial. Here, in a case involving punitive damages, the defendants were prevented from testifying that had they known of the rescission agreement, regardless of its legality, they would have conducted themselves differently. This is sufficient to require a new trial at least on punitive damages. However, the issues with regard to actual damages and punitive damages are so intertwined that justice would be best served to require a new trial on all issues.

_____
                Justice

13

Mr. Justice Fred J. Weber dissents as follows:

I respectfully dissent from the majority opinion in the following respects.

I agree with the majority's affirmance of the trial court decision to exclude evidence of alleged violations of subdivision laws and regulations by the plaintiffs.

I disagree with the majority's conclusion that Jury Instructions No. 8 and No. 10 as given by the District Court are an incorrect statement of the law. In substance these instructions stated that the adjacent land owners as abutting owners have a special right to use the lands within the subdivision and that the attempted one foot reservation from dedication of the public road in the subdivision was ineffective and void because the change was not made part of an amended plat nor was the procedure for vacating a public roadway followed. Basically the instructions correctly set forth the appropriate law for this case.

The certificate of dedication of the plat contained the following statement:

> "The above described tract of land is to be known and designated as LITTLE BEAR SUBDIVISION . . . and the lands included in all streets, are hereby granted and donated to the use of the public forever.. . ."

No modification of that dedication was made by amendment, vacation or otherwise. It is therefore clear that the streets in the plat were effectively granted to and owned by the public. The purported agreement between the defendants and the county commissioners provided that one foot of area in all streets adjacent to the exterior boundaries of the subdivision shall be considered as reserved from the dedication contained in the plat. I find no authority for such a reservation. The reservation contradicts the plat

14

itself. The effect of the dedication in the plat is stated in § 76-3-103(2), MCA as follows:

> "'Dedication' means the deliberate appropriation of land by an owner for any general and public use, reserving to himself no rights which are incompatible with the full exercise and enjoyment of the public use to which the property has been devoted."

The purported agreement was of course in complete derogation of the foregoing statutory definition of dedication to the public in that it attempted to make the exterior one foot area of the street unavailable for full exercise and enjoyment by the public. The controlling standards for amendment or change in a plat with regard to the use of the one foot portion of a street are contained in the Uniform Standards for Final Subdivision Plats at § 8.94.3003 of the Administrative Rules of Montana. Section 1(d) of those standards provides:

> "(d) Changes to a filed subdivision plat must be filed with the county clerk and recorder as an amended plat. An amended plat may not be filed unless it meets the filing requirements for a final subdivision plat specified in these rules . . ."

It is clear there was no attempt on the part of anyone to amend the plat in a manner consistent with these standards. In addition § 16.2 of the Gallatin County Subdivision Regulations provides:

> "Material Alterations. Amendments that materially alter the final plats shall be made by the filing of an amended plat, approved by the governing body.. . ."

No attempt was made to amend as required under the Subdivision Regulations of the County.

The portion of the agreement between the defendants and the County relied upon as a protection by the defendants is as follows:

> "1. The one foot of land area in all within LITTLE BEAR subdivision, immediately adjacent to the exterior boundaries thereof shall be considered as

15

RESERVED from the dedication contained on the plat of LITTLE BEAR."

There is no authorization for such an agreement. The above cited standards and regulations prohibit any such agreement. It is obvious that the intent of the agreement was to subvert the Certificate of Dedication, which granted to the public the ownership and right to use all of the streets including the one foot in question.

I would therefore agree with the contention of the plaintiffs that the contract is void under § 28-2-603, MCA, which in substance provides that where the single object of a contract is unlawful, the entire contract is void. That is an accurate description of this particular contract.

I would therefore conclude that the instructions given were a correct statement of the law. In doing so I would point out that the District Court in the last sentence of Instruction No. 10 directed the jury that it may consider the defendants' actions concerning the agreement with the County Commissioners in determining whether the defendants acted innocently or in good faith or whether they acted maliciously. After the receipt of the instructions, the jury rendered a verdict for the plaintiffs in the amount of $22,000 actual damages and $20,000 in punitive damages.

I would hold that Jury Instructions No. 8 and No. 10 were adequate statements of the law.

I would further hold that the trial court did not err in its refusal to instruct on the law of rescission. I find no basis for requiring some type of notice before rescinding a contract which is improper and therefore unlawful under the statutes. I do not see how some sort of equitable requirement is necessary before Gallatin County gave notice that it cancelled the contract which on its face is illegal.

16

In addition, I do not find that the award of damages was excessive or unsupported by substantial evidence. As I have previously indicated, the instruction regarding the attempted reservation of one foot of the streets stated to the jury that it could consider the actions of the defendants in determining whether the defendants acted innocently or in good faith or maliciously. It seems clear that all of these were issues properly determined by the jury in accordance with the law. I would affirm the District Court.

_____
Justice

Mr. Chief Justice Frank I. Haswell joins in the foregoing dissent.

_____
Chief Justice

Mr. Justice Frank B. Morrison, Jr. joins in the foregoing dissent.

_____
Justice

17