No. 95-224

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

BIG SKY HIDDEN VILLAGE
OWNERS ASSOCIATION, INC.,
    Plaintiff and Appellant,

v.

HIDDEN VILLAGE, INC.,
    Defendant and Respondent

and

CARLISLE NEITHOLD, et al.,
    Defendants and Respondents.

------------------------------------

HIDDEN VILLAGE, INC.,
    Third Party Plaintiff
    and Respondent,

v.

CALVIN JEROME HANAN, et al.,
    Third Party Defendants
    and Appellants.


APPEAL FROM:   District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

               Gregory   O.   Morgan,   Robert   Cameron,   Bozeman,
               Montana; K. Kent Koolen, Moulton Law Firm (Big Sky
               Hidden Village Owners Association, Calvin Hanan, et
               al.)

        For Respondent:

               James H. Goetz, Robert K. Baldwin, Goetz, Madden &
               Dunn, Bozeman, Montana (Hidden Village, Inc.);
               Calvin J. Stacey, Billings, Montana (Hidden Village,
               Inc., Carlisle, Neithold, et al.)

Submitted on Briefs:   January 4, 1996

Decided:   April 23, 1996

FILED

APR 2 3 1996

Filed: Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Big Sky Hidden Village Owners Association (Big Sky) appeals from a judgment and memorandum and order entered by the Eighteenth Judicial District Court, Gallatin County granting Hidden Village, Inc.'s (HVI) motion for partial summary judgment, denying Big Sky's motion for partial summary judgment, and denying HVI's motion to strike. We affirm.

## ISSUES

1.      Whether real property adjacent to a condominium development, which was never submitted to Montana's Unit Ownership Act by description on the condominium declaration or amendment thereto, is subject to the act and the declaration.

2.      Whether the owner of real property adjacent to a condominium development may use the roads running through the condominium property to access the adjacent land.

3.      Whether the owner of real property adjacent to a condominium development may use the water and sewer mains running through the condominium property to serve the adjacent land.

## BACKGROUND

On December 15, 1980, the Gallatin County Board of County Commissioners approved Big Sky Camper Village Inc.'s preliminary application for a planned unit development (PUD) located on the site of the existing Big Sky Camper Village for the construction of a maximum of 198 condominium units. The proposed development consisted of 37.8 acres located approximately one and one-half miles west of Meadow Village. Those 37.8 acres encompass the Big Sky Hidden Village Condominium and HVI's remaining property. The findings of fact and order approving the PUD did not restrict where on the 37.8 acres the 198 units were to be placed. The findings of

2

fact and order approving the PUD stated that "adequate access to all units should be provided even though the roads will be private ones," and ordered that "the roads are the responsibility of the developer until they are turned over to the Property Owner's Association and that the roads will be private roads, for which the County will have no responsibility." The Gallatin County Board of County Commissioners' order further stated that "water supply and sewage disposal will be handled by existing central systems." The rural improvement district agreed to provide sewage collection and disposal to the 198 condominium units. Additionally, Lone Mountain Springs, Inc., agreed to provide domestic water to the 198 condominium units.

Pursuant to § 70-23-103, MCA, Big Sky Camper Village, Inc., filed the declaration and by-laws for the Big Sky Hidden Village Condominium. The declaration provides in pertinent part:

> Declarant reserves the right from time to time (but on or before 10 years from the date of the initial recording of this Declaration) to expand the number of units to be included in this condominium by subjecting the condominium site plan as shown in Exhibit "C" to the construction of additional units, and to provide for up to 198 additional units for an over-all total of 198 units of one, two, or three bedroom units.

The declaration submitted Tract I-A to the Condominium Act and has at various times submitted additional lands contained within certificate of survey 1605 (COS 1605). Specifically, the original declaration describes the real property submitted by the declaration and subject to the Montana Unit Ownership Act as

> Tract I-A of the Condominium Subdivision known as Hidden Village Condominium recorded on _____, 1980, in Book ____ of Plats at Page ____, Gallatin County, Montana and situated within the _SW_ 1/4 of Section _35_, Township _6_ South, Range _3_ East, M.P.M., Gallatin County, Montana.

3

Tract I-A does not include the entire area covered by COS 1605. Although the land in dispute in the instant case is neither part of Tract I-A nor has been submitted as an amendment to the declaration, it is included within the description of the PUD.

HVI is the successor in interest to Camper Village, the original declarant/developer. Of the approved 198 units, 141 have been constructed as Big Sky Hidden Village Condominiums. When HVI conveyed the condominium units, it did not reserve any easement, right of access, or right of use for the roads, water lines, or sewer lines. However, the roads and the sewer and water lines cross HVI's property in order to reach the Big Sky Hidden Village Condominium. The land included in COS 1605 but not included in the declaration belongs to HVI. This remaining land surrounds the Big Sky Hidden Village Condominium on three sides. See diagram.

On April 2, 1991, HVI applied to the Department of Health and Environmental Sciences, Lone Mountain Springs, and Rural Improvement District #305 for approval of 57 additional units. Big Sky then filed suit in the Eighteenth Judicial District Court, Gallatin County, seeking a declaratory judgment that the land within COS 1605 is subject to the declaration, that the roads within the Condominium are private and not available for public use, and that the water and sewer systems are the property of the unit owners and cannot be expanded without their permission. HVI moved for partial summary judgment, seeking a declaratory judgment that the real property owned by HVI within COS 1605 is not subject to the Big Sky Hidden Village Condominium declaration or bylaws.

4

On June 15, 1994, the District Court granted HVI's motion, stating that HVI's property within COS 1605 is not subject to the Big Sky Hidden Village Condominium declaration or bylaws.

On June 30, 1994, Big Sky moved for partial summary judgment on the remaining issues. In its March 31, 1995 memorandum and order, the District Court denied Big Sky's motion ruling that the roads, while private, are not the exclusive property of Big Sky or its members; that the roads are a public right-of-way for all purposes other than maintenance; that HVI has the right to use the roads for ingress and egress to its property because it has acquired easements by implication and necessity; and that HVI has the right to use the water and sewer systems. On April 14, 1995, Big Sky filed its notice of appeal from the District Court's judgment and memorandum and order granting HVI's cross motion for partial summary judgment.

HVI filed in this Court a motion to dismiss the appeal arguing that neither District Court order is reviewable because there were multiple claims and because the orders were not final. Citing Hennen v. Omega Enterprises, Inc. (1994), 264 Mont. 505, 507-08, 872 P.2d 797, 799, we held in a June 1, 1995 order that the District Court's March 1995 order is appealable under Rule 1(b)(2), M.R.App.P., because it was a denial of injunctive relief and that the June 15, 1994 judgment is appealable because it is an intermediate order or decision.

5

## STANDARD OF REVIEW

We review a grant of summary judgment *de novo* using the same criteria initially used by the District Court under Rule 56, M.R.Civ.P. Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. Therefore, we determine whether there is an absence of genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Mead, 872 P.2d at 785.

## DISCUSSION

1. Whether real property adjacent to a condominium development, which was never submitted to Montana's Unit Ownership Act by description on the condominium declaration or amendment thereto, is subject to the act and the declaration.

Big Sky claims that the District Court erred in finding that the land owned by HVI is not subject to the Big Sky Hidden Village Condominium declaration or bylaws, and thus is not subject to Montana's Unit Ownership Act, Title 70, chapter 23, MCA. HVI argues that the District Court correctly determined that the ten-year time limit in the declaration only applies to land included in that declaration or added by amendment thereto and does not limit HVI's right to develop its remaining land.

Section 70-23-103, MCA, sets forth the applicability of the Unit Ownership Act establishing a condominium as follows:

> **Applicability -- submission by declaration required.** In order to submit any property to the provisions of this chapter, the sole owner or sole lessee or all of the owners or all of the lessees thereof shall execute, acknowledge, and record a declaration in the office of the recording officer of the county in which the property is located. The declaration shall be executed in accordance with 70-23-301.

6

Section 70-23-102(6), MCA, provides that a declaration is the instrument by which property is submitted to the provisions of the Unit Ownership Act. Actual filing of the declaration is the action "which subjects the property in question to the provisions of the act." Jordan v. Elizabethan Manor (1979), 181 Mont. 424, 430, 593 P.2d 1049, 1053. A declaration shall contain among other things "a description of the land, whether leased or in fee simple, on which the building is or is to be located." Section 70-23-301, MCA. A certificate of survey, on the other hand, is not a declaration and does not submit land to the Unit Ownership Act.

Accordingly, the declaration for the Big Sky Hidden Village Condominium and not COS 1605 determines the land subject to the provisions of the Unit Ownership Act. Specifically, the original declaration included only Tract I-A. Subsequent amendments to the declaration included Tracts I-XI and the Recreation Tract. Big Sky concedes that if the property in question is not on Big Sky Hidden Village Condominium land, then it is not subject to the declaration.

However, Big Sky argues that the description of property in the original declaration is incomplete and therefore COS 1605 properly determines the property included in the Big Sky Hidden Village Condominium. While section II of the declaration broadly states that the property included in the Condominium is located in "the SW 1/4 of Section 35, Township 6 South, Range 3 East, M.P.M., Gallatin County, Montana," the original site plan (Exhibit B), incorporated within the original declaration and recorded with it,

7

specifically includes a metes and bounds description of the property submitted to the act. Similar site plans were submitted with each amendment to the declaration. Therefore, the declaration contained a complete and specific description of the property.

HVI argues that the ten-year limitation contained in the declaration only governs the addition of units to the Big Sky Hidden Village Condominium, not development of land outside the Condominium. HVI further argues that the term "expansion" in the declaration refers to the addition of units or land to the Condominium and not to other property owned by HVI. Moreover, HVI notes that the ownership and voting section of the declaration states that "[t]he Hidden Village Condominium consists of the real property described above . . . ." Exhibit C to the declaration shows "the proposed or projected location of the additional buildings and lands which may be added by the declarant." Therefore, for other land to be included within the Condominium, it would have to be added by amendment. Because the amendments to the declaration do not include HVI's land in question, HVI argues that the land is not part of the Condominium.

There are no provisions within the declaration that purport to prevent HVI from developing land not placed within the Big Sky Hidden Village Condominium. The ten-year limitation in the declaration only governs the addition to units to the Big Sky Hidden Village Condominium, not the separate development of HVI's land outside the Condominium. Thus the term "expansion" and the limitation thereof, applies only to additional units to the Big Sky

8

Hidden Village Condominium, not the separate construction of separate improvements on land owned by HVI outside the Condominium. The Gallatin Board of County Commissioners approved 198 units; Lone Mountain Springs agreed to provide service for 198 units, and RID 305 agreed to provide service for 198 units. The Gallatin County Clerk and Recorder has the declaration on file to give notice to any interested party exactly what land is included in the Big Sky Hidden Village Condominium. Accordingly, we hold that the District Court correctly found that HVI's real property adjacent to the Big Sky Hidden Village Condominium was never submitted to Montana's Unit Ownership Act by description on the Condominium declaration or amendment thereto.

2. Whether the owner of real property adjacent to a condominium development may use the roads running through the condominium property to access the adjacent land.

Big Sky contends that the roads going through the Condominium are private and therefore HVI may not use them. HVI argues that the roads are public and in the alternative that HVI has an easement by implication and an easement by necessity to use the roads.

As early as 1973, what is now Big Sky Hidden Village Condominium and HVI's remaining property was laced with a system of roads accommodating vehicles for use as an R.V. park. Therefore, in 1980, when Camper Village sought approval of the PUD, a series of roads already existed on the land to be developed. The roads extended through what is now HVI's remaining property and what is now the Big Sky Hidden Village Condominium. Those roads which

9

predated the PUD approval, the filing of the declaration, and the construction of the first condominium unit, are the same roads that continue to serve the Condominium and HVI's land today. Additionally, in approving the PUD, the Gallatin County Board of County Commissioners found that "to preserve to the maximum extent possible the natural characteristics of the land . . . . adequate access to all units should be provided even though the roads will be private ones."

Camper Village, Inc., and HVI developed the Big Sky Hidden Village Condominium in phases. Camper Village, Inc., initially submitted to the declaration Tract I-A comprised of a few acres and 14 units. Camper Village Inc., and HVI continued to develop the Condominium in phases, adding small parcels of land to the declaration. During this phased development, unit owners had to cross property owned by Camper Village or HVI to obtain access to their condominiums. Similarly, to obtain access to the remaining land to construct additional units, Camper Village and HVI used the existing roads that cross the property that is already part of the Condominium. Thus HVI claims that it had an easement by necessity allowing it to use the existing road system.

An easement by necessity is a subspecies of an easement by implication that arises through strict necessity for exit and access to a parcel of property. Graham v. Mack (1984), 216 Mont. 165, 175, 699 P.2d 590, 596; see also Schmid v. McDowell (1982), 199 Mont. 233, 237, 649 P.2d 431, 432. In Schmid, a property owner brought action against a neighboring property owner seeking a

10

declaration of an easement by necessity. We defined an easement by necessity as follows:

> [w]here an owner of land conveys a parcel thereof which has no outlet to a highway except over the remaining lands of the grantor or over the land of strangers, a way of necessity exists over the remaining lands of the grantor. Similarly, a way of necessity is found when the owner of lands retains the inner portion conveying to another the balance, across which he must go for exit and access.

Schmid, 649 P.2d at 433 (citations omitted); see also Peters v. Johnson (1983), 203 Mont. 120, 661 P.2d 24. Further, we distinguished an easement by necessity from other implied easements in noting an easement by necessity need not be in existence at the time of conveyance, but rather the conveyance gives rise to the easement. However, the tracts over which the easement is claimed must have had a common ownership or unity of title immediately prior to the severance giving rise to the necessity. Schmid, 649 P.2d at 433.

Subsequently in Graham, we set forth two basic elements of an easement by necessity: 1) unity of ownership, and 2) strict necessity at the time the unified tracts are separated. Graham, 699 P.2d at 596. In Graham, we held that no implied easement existed absent unified title of the property involved. We reiterated the strong public policy against shutting off a tract of land and thus rendering it unusable. "Where an owner of land conveys a parcel which has no outlet to a highway except over the remaining lands of the grantor or over the lands of strangers, a way of necessity exists over the remaining lands of the grantor." Graham, 699 P.2d at 596 (quoting Schmid, 649 P.2d at 433).

11

However, the way granted may not be over the land of a third party or stranger to the title. Graham, 699 P.2d at 596-97; see also Woods v. Houle (1988), 235 Mont. 158, 163, 766 P.2d 250, 253.

In Woods, the district court granted an easement by necessity. In reversing the district court, we held that the respondent was not able to meet the requirements of an easement by necessity as set forth in Graham. The easement by necessity did not give the respondent access to a public road but only to a third party's land, and as we held in Graham, a way granted may not be on the land of a third party. Moreover, the respondent had an easement by prescription which is incompatible with an easement by necessity. Woods, 766 P.2d at 253.

In Smith v. Moran (1985), 215 Mont. 31, 38, 693 P.2d 1246, 1251, we considered the Gallatin County Subdivision Regulation 4.4.2, which provides that:

> [w]hen a new subdivision adjoins unsubdivided land and reasonable access thereto must pass through the new subdivision, streets and rights of way shall be provided to allow suitable access to the unsubdivided land.

In Smith, there was evidence that plaintiffs had ample alternative access to their property, and there was no evidence to suggest that access across the subdivision was essential. We further noted that "any unique property interest in abutting landowners is limited to the right only to adequate access necessary to connect the landowner to the general street system." Smith, 693 P.2d at 1251 (citing Wynia v. City of Great Falls (1979), 183 Mont. 458, 600 P.2d 802).

12

In the instant case, HVI meets both the unity of title requirement and the requirement of strict necessity at the time the unified tracts were separated. Camper Village, HVI's predecessor, owned all of COS 1605 and conveyed part of that tract to the Big Sky unit owners. At the time Camper Village conveyed Tract I-A to the Big Sky unit owners, submitting Tract I-A to the declaration, the strict necessity of access and exit to the public roads arose. In his affidavit, Jack Schunke, an engineer, stated that if not afforded access across the existing roads, HVI will have great difficulty developing additional property, if it may do so at all. Moreover, he stated that the road some of the unit owners use to enter the Condominium crosses HVI's land. Carlisle Neithold, president of HVI stated in his affidavit that HVI does not own abutting land outside COS 1605, and cannot obtain access to its remaining land without using the existing roadways. Thus there is evidence that HVI does not have ample alternative access to its property.

Big Sky's argument that the ten-year limitation in the declaration precludes an easement by implication and by necessity because it negates the presumed intent to reserve easements and the necessity for those easements does not persuade us. As stated above, the ten-year limitation in the declaration only addresses HVI's right to continue to add land or units to the Big Sky Hidden Village Condominium and does not address HVI's right to use the roads.

Accordingly, the District Court correctly granted summary judgment in favor of HVI, determining that HVI has an easement by necessity. Because we hold that the District Court correctly granted summary judgment on the easement by necessity, we need not reach the issue of HVI's alleged easement by implication.

3. Whether the owner of real property adjacent to a condominium development may use the water and sewer mains running through the condominium property to serve the adjacent land.

Big Sky contends that the sewer and water systems are common elements and therefore HVI has no right to use them. HVI concedes that the water and sewer systems may be common elements held by the condominium unit owners as tenants in common, but contends that Big Sky does not have exclusive ownership of the water and sewer systems. In fact, HVI argues that public utilities own the water and sewer systems, have the responsibility for maintaining the systems, and therefore have the exclusive right and duty to determine who hooks up to the systems.

In its definition section, the declaration includes water and sewer lines as general common elements. Section 70-23-102(8)(d), MCA, also includes water and waste disposal as general common elements. Section 70-23-404, MCA, explains the nature of the ownership interest in general common elements as follows:

> The undivided interest in the common elements shall not be separated from the unit to which it appertains and shall be conveyed or encumbered with the unit even though such interest is not expressly mentioned or described in the conveyance or other instrument.

Consequently, each unit owner may use the common elements for their intended purposes. See § 70-23-503, MCA. The bylaws of a

14

condominium provide for the maintenance, repair, and replacement of the common elements or the additions and improvements thereto. Section 70-23-504, MCA.

HVI argues that while the Condominium members may own the water and sewer lines, they do so as tenants in common and cannot preclude another party from a right to an easement to use the same common elements. In fact, HVI argues that Big Sky's claim to exclusive use and ownership of the water and sewer lines contradicts the fact that Lone Mountain Springs and Water and Sewer District (WSD) #363 exercise the right to determine who hooks up to the respective systems and contradicts the approval of the PUD allowing HVI to obtain water and sewer service through the existing systems.

Prior to 1973, a developer installed the water distribution mains located within what is now Big Sky Hidden Village Condominium. When the Gallatin County Board of County Commissioners approved the PUD in 1980, the water distribution system consisting of a storage tank on the hill above the development and numerous water distribution mains and loops therefore already existed. Additionally, prior to 1972, a developer installed a series of sewer collection mains on the development. Rural Improvement District #305 obtained ownership of the sewer collection mains that transported waste water from the development to a treatment facility that it owned and operated.

After the PUD was approved, Camper Village, Inc. and HVI developed the Big Sky Hidden Village Condominium in phases. During

15

the phased development, the unit owners had to use the water distribution mains and sewer collection mains passing underneath Camper Village, Inc. property. Similarly, when Camper Village, Inc. and HVI constructed units for inclusion into the Condominium, they hooked those units up to the existing water distribution and sewer collection mains running, in part, under the Condominium property.

Lone Mountain Springs owns the water tank and wells serving Big Sky Hidden Village Condominium and has repaired and maintained the lines servicing the Condominium. Two water sources serve the Big Sky Hidden Village Condominium, a well not far from the condominiums and a well that serves the Sweetgrass Hills Subdivision. Therefore, two water distribution mains enter the Condominium, one from the nearby well and one from the water system that serves the Sweetgrass Hills Subdivision. These mains intersect and travel to the water storage tank on Big Sky Lumber Company's property. The Condominium derives water pressure and capacity from the water storage tank. That tank is crucial to Big Sky Hidden Village Condominium's continued service. The water distribution mains that transport water through HVI's property to the Condominium and on to a third party's property existed before Camper Village bought the property it then conveyed to HVI and to the Condominium. Those same mains now transport water from a third party's property, through HVI's property, through the Condominium through HVI's property and to the water storage tank.

Lone Mountain Springs has maintained and repaired the water system serving the Condominium. Big Sky does not pay for the

16

repair and maintenance expenses to the water system. Lone Mountain Springs installed a telemetry system to regulate the flow of water into the storage tank to prevent the tank from overflowing or becoming empty. After a well had become contaminated, Lone Mountain Springs connected the water distribution pipes in the Big Sky Hidden Village condominium to the Sweetgrass Hills Subdivision water system.

Section 69-4-511(1), MCA, provides for the financial responsibility and liability for water service as follows:

> A property owner is responsible for the costs of constructing privately supplied water service pipelines from the main to his premises and for maintaining service pipelines from his property line to his premises.

Big Sky Hidden Village Condominium did not construct the water lines on its premises or the lines from its premises to the main water lines, nor has it paid for the maintenance or repair of the water lines from its property line to its premises.

The sewer collection mains also pass through property owned by HVI, the Condominium and on to property owned by third parties. Originally, Rural Improvement District #305 serviced Camper Village Inc.'s property and then serviced both HVI's and the Condominium's property. Rural Improvement District #305 transferred its assets, debts, and liabilities to WSD #363; it included in the assets transferred existing sewer collection pipes serving the Big Sky Hidden Village Condominium. WSD #363 was organized by vote of the citizens of the Big Sky area. All of the sewer and waste water generated by the Big Sky Hidden Village Condominium flows into the

17

sewer collection mains and sewage treatment facility owned by WSD #363.

RID #305 maintained the sewer collection system servicing the condominium. RID #305 hired a firm to conduct a video inspection of the sewer mains and hired an irrigation company to dig up and repair portions of the sewer mains serving the Condominium. WSD #363 has also maintained the lines within the Condominium and has given approvals and disapprovals for hook up of additional users within the Condominium. Therefore, WSD #363 clearly exercises indicia of ownership of the sewer lines in the Big Sky Hidden Village Condominium. WSD #363 agreed to provide service to all 198 units in the PUD. Consequently, the annual assessment HVI pays to Gallatin County includes payment to WSD #363.

The undisputed evidence contained in the affidavits indicates that Lone Mountain Springs and WSD #363 claim ownership of the systems they operate and maintain. The evidence of maintenance and repair substantiates that claim. To the contrary, although Big Sky Hidden Village Condominium claims ownership of the systems, it provides no evidence to support its claim. The Condominium failed to present a persuasive argument in its brief to support ownership of the water and sewer systems. Therefore, because WSD #363 owns the sewer system that services the Big Sky Hidden Village Condominium and Lone Mountain Springs owns the water system that services the Big Sky Hidden Village Condominium, the District Court correctly determined that Big Sky may not interfere with or control Lone Mountain Springs' or WSD #363's service and hook ups.

18

Affirmed.

_____
                                                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
        Justices

19